HOME BUILDERS, APPELLEE, V. ANDREW C. BUSK ET AL.,
APPELLANTS.

FILED APRIL 20, 1921. No. 21126.

1. **Contracts: BUILDING CONTRACT: DELAY: DAMAGES.** A contract between an owner and a builder failed to provide that the builder should not be liable in damages for delay of completion, within the time agreed on, that arose from strikes or otherwise. Completion was delayed by strikes, and by world war conditions, for a period of 7½ months, and the building cost was thereby greatly increased. The court found that 22 weeks of the delay was attributable to the owner and the remainder was attributable to the builder. The owner did not file a cross-appeal. The builder in its cross-petition sought to recover approximately $5,500, as alleged damages, on account of increased cost of labor and material and the like that was occasioned by the delay. The owner recovered judgment for $11,499.25. *Held*, that, under the facts, neither party should be permitted to recover damages.

2. ———: ———: ———: ———. A contract between an owner and a builder for the construction of a building failed to provide for nonliability of the builder for damages, arising from strikes and the like. *Held*, that, in an action in equity for an accounting and for damages, neither party can recover from the other for damages arising from delays that were caused by strikes and by world war conditions, when it appears that both parties were to some extent chargeable with negligence and so contributed to the delay complained of.

3. **Questions Not Decided.** Whether plaintiff is a "trustee of an express trust" and whether the contract sued on is "an agency contract," we do not find it necessary to decide.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed and dismissed.*

*Byron G. Burbank,* for appellants.

*James H. Adams, Stout, Rose, Wells & Martin, McGilton & Smith, H. L. Mossman, Montgomery, Hall & Young, Ross L. Shotwell* and *Nolan & Woodland, contra.*

DEAN, J.

Home Builders, plaintiff herein, recovered a judgment

against Busk & Wind, the defendant partnership, for $11,499.25 in an equity suit for an accounting. The defendant partnership appealed.

The suit grew out of the erection by the partnership of a six-story and basement, stone, concrete and iron building in Omaha, known as the "Morris Hotel Apartments." The contract on which the suit is based is dated August 26, 1916. By such of its terms as are material here, the recitals in the contract disclose that the partnership agreed to furnish all labor, material and equipment for the construction and completion of approximately 60 per cent. of the building, as shown on certain designated plans and specifications, and that the work should not cost to exceed $107,500, including a commission of $6,000, in addition to the cost of all labor and materials used, and that the work that devolved upon the partnership should be completed by March 1, 1917; that the parties should co-operate to the end that they might work out "any saving in the cost of the building;" that the partnership should furnish plaintiff weekly statements of labor performed and amounts of material used; that before any changes in the plans and specifications were made, or extras ordered, the partnership should consult plaintiff and the architect and obtain a written order from the architect therefor; that for all extra work and material, not included in the contract, the partnership should receive a commission of 6 per cent. of the cost of such extras; and that plaintiff should maintain fire and tornado insurance on the building during the progress of the work.

It seems to be conceded that the remaining 40 per cent. of the building, having to do with the gas-fitting, installation of the heating plant and accessories, the plumbing and accessories, and wiring for and furnishing lighting fixtures and the like, were all to be installed by plaintiff, at its own expense, under separate contracts with subcontractors who were not under the direction of nor responsible to the partnership. None of the subcontractors, so employed by plaintiff, are parties to this action.

Plaintiff prayed that the partnership be compelled to pay all damages that it sustained "by reason of the failure of said defendants to perform their said contract, including the reasonable rental value of said premises during the period of delay in completion of said building,. after March 1, 1917."

The Pantel Realty Company, a corporation, is a party defendant, being the owner of the ground on which the apartment house was built. In its cross-petition the Pantel Company, hereinafter called the company, prayed that plaintiff have judgment against the partnership for all damages sustained on account of alleged failure to fulfil its contract with plaintiff, and that such sum as plaintiff should recover, if any, be decreed to be a payment *pro tanto* upon the company's mortgage indebtedness of $148,000, to plaintiff, for a part of the purchase price of the ground on which the building was erected and for money advanced in the construction of the building.

In its answer and cross-petition the partnership pleaded that plaintiff was not a competent suitor and could not lawfully maintain the action, and that the contract is, from any viewpoint, "an agency contract," under which plaintiff should be denied any recovery. The partnership prayed for affirmative relief, in a sum approximating $5,500, for an increased cost of labor and the like, as alleged, that it was compelled to pay on account of the delays that were brought about by plaintiff.

The court found that the building cost plaintiff $119,-054.29; that the two conditions in the contract, namely, with respect to the cost of the building and the date of its completion, and the covenants generally therein, were made for the benefit of George T. Porter and George. J. Morris, the owners and proprietors of the building enterprise and of the ground on which the building was erected; that Porter and Morris after the making of the contract in suit conveyed the property to the Pantel Realty Company, a corporation organized by them, and assigned all

of their rights under the building contract to plaintiff; that the Pantel Realty Company owed plaintiff $132,000, as evidenced by notes secured by a mortgage on the premises, and that plaintiff was entitled to receive the avails of the present suit to be applied on the debt owing to it by the company; that the partnership did not perform the part of the work that devolved upon it to perform, under the building contract, until October 15, 1917, but that considerably more than one-half of the delay, namely, 22 weeks thereof, was caused by and was attributable to plaintiff; and that the remainder of the delay was attributable to the partnership. On this point the decree reads:

"The court finds that the following delays to the progress of the work which Busk and Wind were obligated to perform were caused by the plaintiffs or by subcontractors under Home Builders, who were not under the control and direction of Busk and Wind, namely, three weeks delay caused by Morris Brothers, subcontractors of the plumbing, heating, and gas-fitting; three weeks delay caused by Bennett & Company, the subcontractors of the electric wiring; six weeks delay caused by changing the window frames and sash in the south and east walls from wood to steel; eight weeks delay caused by the addition of a sun-parlor on the roof; and that two weeks additional delay is chargeable to strikes that would not have been encountered except for the delays attributable to plaintiff. The court finds all other delays in the completion of said contract are attributable to defendants, Busk & Wind, and that after extending the time of completion fixed by the contract by all of the delays legally excusable or attributable to the plaintiff, or to persons independently employed by plaintiff, the said defendants should by the exercise of due diligence have completed their contract by the 15th day of July, 1917."

No cross-appeal was prosecuted by plaintiff.

In view of the record in the present case, it is proper that we should notice the local situation at Omaha, in

the spring and summer of 1917, as disclosed by the evidence, as affecting the building and other trades in that city. It may be observed too that the unsettled labor condition in Omaha at that time is fairly reflected in *State v. Employers of Labor,* 102 Neb. 768. And this aside from world war conditions that will be presently noticed.

The evidence before us shows, and as pointed out in the *Employers of Labor* case, that industrial disturbances of considerable magnitude occurred in Omaha, in the spring and summer of 1917, that interfered with the welfare of large classes of the community, and that culminated "in lockouts, strikes, disorderly assemblages, assaults, and damage to property;" that numerous strikes resulted because employers refused to discharge employees who would not join a labor union; that there was a general teamsters' strike because some nonunion men were employed; that a lockout followed in all the fuel and building material yards; that fuel and building material dealers refused to sell to the public generally; that this unfortunate situation "interfered with the conduct of building operations and caused the idleness of building craftsmen;" that disorders, breaches of the peace and assaults were common and conditions generally were becoming chaotic.

It is elementary that, unless provision therefor is expressly reserved in the contract, a builder cannot plead the effect of a strike in extenuation of his failure to complete a structure within the time specified in his contract with the owner. But can the owner be heard to complain in a court of equity, when it is shown that, by his own negligent conduct, he has occasioned much the greater part of the delay and the resultant increased cost of which he complains? A man cannot, of course, be permitted to profit by his own wrong.

The strike situation at Omaha was not the only disquieting circumstance that was there encountered. The world war was on. The court will of course take judicial notice of the conditions that attended the prosecution of

that war and the effect of such conditions upon the country at large, and as affecting building and other construction activities generally. For its effective prosecution the government required practically all available man power and much of the iron and steel products and other material that is ordinarily used in the building trades and in other enterprises. The delay complained of in the present case threw the building enterprise in question into the midst, not only of the local "chaotic conditions" that are discussed in the *Employers of Labor* case, but into the midst of the troublous world war conditions as well. The result was that the price of labor was enormously increased, in some instances almost three-fold, and its efficiency was greatly decreased, in many instances as much as 50 per cent.

True, the building was not completed on March 1, 1917, the date fixed for its completion in the contract. But, in view of the established fact that 22 weeks of the delay complained of is attributable to plaintiff, we are not prepared to say that defendants should be holden, in a court of equity, for the damage claimed by plaintiff. Besides, there is evidence on the part of the partnership, tending to prove that but for the delays so occasioned by plaintiff the building would have been completed on the date specified in the contract. But the evidence, all together considered, shows that the partnership was not blameless. We conclude that, in view of the record before us, the partnership should not be held for the damages assessed against it on account of delays, nor for the resultant additional expense, when it was not wholly responsible for either. The partnership's prayer for recovery must also be denied.

The partnership argues that, under the pleadings and the facts, plaintiff is not competent to maintain this suit. Plaintiff contends that it comes within the meaning of section 7585, Rev. St. 1913, and that the contract in suit was in fact made by it and prosecuted for the benefit of the Pantel Company, assignee of Porter and Morris, in

plaintiff's name. However, in view of our decision, we do not find it necessary to decide that question. Nor have we found it necessary to decide whether the contract sued on is "an agency contract," as contended by the partnership.

From a review of the voluminous record, in which it clearly appears that both parties are in part to blame for the delay complained of, and for the damages arising therefrom, we conclude that neither party is entitled to recover.

The judgment must therefore be reversed and the action dismissed.

REVERSED AND DISMISSED.

LETTON, J., dissents.

ROSE and DAY, J.J., not sitting.